```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA       :

          v.                   :  CRIMINAL NO. 01-CR-260
                                  (Judge Kane)
DERRICK RUSSELL FELDER,        :
          Defendant
```

**FILED**
HARRISBURG, PA

JUN 1 0 2004

MARY E. D'ANDREA, CLERK
Per _____
         Deputy Clerk

```
              TRANSCRIPT OF PROCEEDINGS

                    CHANGE OF PLEA

     Before:  Hon. Yvette Kane, Judge

     Date:    July 24, 2002

     Place:   Courtroom No. 4
              Federal Building
              Harrisburg, Pa.




COUNSEL PRESENT:

     WILLIAM A. BEHE, Assistant U.S. Attorney

          For - Government

     MATTHEW R. GOVER, Esquire

          For - Defendant




                              Monica L. Zamiska, RPR
                              Official Court Reporter
```

1          MR. BEHE: Your Honor, this is the matter of the
2  United States of America v. Derrick Russell Felder which is
3  at Criminal Docket No. 01-260. Mr. Felder is present before
4  you with counsel Mr. Gover, and now is the time and place set
5  by the Court for Mr. Felder to withdraw his plea of not
6  guilty as to Count 1 of the indictment and enter a plea of
7  guilty to that count pursuant to a plea agreement entered
8  into with the United States.
9          THE COURT: Good morning, Mr. Gover.
10         MR. GOVER: Good morning, Your Honor.
11         THE COURT: Mr. Felder, did you hear what Mr. Behe
12 said?
13         THE DEFENDANT: Yes.
14         THE COURT: Is that correct?
15         THE DEFENDANT: Yes.
16         THE COURT: You're going to enter a guilty plea to
17 Count 1 of the indictment this morning?
18         THE DEFENDANT: Yes.
19         THE COURT: Before I can allow you to do that I
20 need to ask you a series of questions about this offense and
21 about you. The purpose of my questions is to make sure that
22 you understand all the rights that you have in connection
23 with this charge and also to make sure that you understand
24 the consequences of entering a guilty plea here. In order to
25 participate in these proceedings and answer the questions

1  that I pose to you you're going to have to waive your right
2  against self-incrimination.  Of course, you don't have to do
3  that.  You are charged in a criminal case, and you have a
4  right to refuse to answer any questions put to you by the
5  authorities about the charge, but to participate in the plea
6  agreement you would have to waive your right against
7  self-incrimination and answer all the questions that I put to
8  you under oath completely and honestly.  And, of course, you
9  can be prosecuted for perjury if you give a false answer to
10 anything that I pose to you now.  Do you understand that?
11         THE DEFENDANT:  Yes.
12         THE COURT:  Is that how you want to proceed?
13         THE DEFENDANT:  Yes.
14         THE COURT:  Miss Kennedy, would you place the
15 defendant under oath.
16         DERRICK RUSSELL FELDER, called as a witness, being
17 duly sworn or affirmed, testified as follows:
18         THE COURT:  Mr. Felder, how old are you?
19         THE DEFENDANT:  Twenty-one.
20         THE COURT:  Twenty-one?
21         THE DEFENDANT:  Yes.
22         THE COURT:  Did you finish high school?
23         THE DEFENDANT:  Yes.
24         THE COURT:  Did you have any college after that?
25         THE DEFENDANT:  Yes.

1    THE COURT:  How much?

2    THE DEFENDANT:  A year.

3    THE COURT:  One year of college.  Where did you go?

4    THE DEFENDANT:  Cheyney University.

5    THE COURT:  Cheyney?

6    THE DEFENDANT:  Yes.

7    THE COURT:  You read and write English then?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Is English your first language?

10   THE DEFENDANT:  Yes.

11   THE COURT:  Are you undergoing any psychiatric or
12   psychological counseling right now?

13   THE DEFENDANT:  No.

14   THE COURT:  How about any drugs or alcohol, have
15   you taken any drugs or alcohol before coming to court this
16   morning?

17   THE DEFENDANT:  No.

18   THE COURT:  Are you on any kind of prescription
19   medication?

20   THE DEFENDANT:  No.

21   THE COURT:  Do you feel that you have had an
22   adequate opportunity to consult with Mr. Gover about the
23   charges and that you understand the charges in this case?

24   THE DEFENDANT:  Yes.

25   THE COURT:  The count that you are going to be

1    pleading to was brought to the court by way of indictment.

2    It alleges that on or about June 8 or 9, 2001 in

3    Chambersburg, Franklin County, Pennsylvania, which is within

4    the Middle District of Pennsylvania, that you, the defendant,

5    Derrick Russell Felder, did intentionally and knowingly

6    unlawfully possess with the intent to manufacture and

7    distribute 5 grams or more of cocaine base, also known as

8    crack cocaine, a Schedule 2 controlled substance, all of

9    which was contained within 100 individual glass vials and 17

10   individual ziplock bags, and that you did these things in

11   violation of Title 21, United States Code, Section 841(a)(1).

12   That's the charge.  Do you have any questions about it?

13           THE DEFENDANT:  No.

14           THE COURT:  Mr. Felder, do you understand that in

15   connection with this charge you do have a right to a full

16   jury trial?  You don't have to enter a guilty plea here.  You

17   could come to this courtroom and have a trial on this count

18   and the other counts of the indictment where you and your

19   lawyer would participate in the selection of 12 jurors who

20   would come here to hear your case.

21           When the jurors were sworn, I would advise them

22   that you enjoy the presumption of innocence; that is, that as

23   you sit in this courtroom they have to presume that you're an

24   innocent man, that it would be for Mr. Behe to prove each and

25   every element of this charge and the other charges in the

1   indictment beyond a reasonable doubt before you could be
2   convicted of them at trial.
3            Because the burden would be his, you wouldn't have
4   to do anything at trial.  You could call witnesses, I would
5   issue subpoenas for you, and you could testify yourself if
6   you wanted to, but because you enjoy the right against
7   self-incrimination that we already talked about you wouldn't
8   have to do any of those things, you could just wait for Mr.
9   Behe to try to prove his case, and then it would go to the
10  jury, and they would be called on to decide whether or not
11  you are guilty of the crimes charged.
12           I would advise the jurors that each and every one
13  of them would have to vote to find you guilty before you
14  could be found guilty at trial; that is, there would have to
15  be a unanimous finding of guilt, every juror would have to
16  agree that you are guilty of the crime charged.  Do you have
17  any questions about any of that?
18           THE DEFENDANT:  No.
19           THE COURT:  Do you understand that at trial you'd
20  have a right to challenge any of the evidence Mr. Behe would
21  present, your lawyer would cross examine all of his
22  witnesses, you could challenge any physical evidence that he
23  presents, any documents or any evidence that was seized in
24  connection with this case, and you would also have the right
25  to challenge the voluntariness of any statements that you

1   might have given in connection with this charge?  Do you
2   understand all of that?
3           THE DEFENDANT:  Yes.
4           THE COURT:  Do you understand that if you enter a
5   guilty plea today, you're going to be waiving all of those
6   rights that we just talked about?
7           THE DEFENDANT:  Right.
8           THE COURT:  You're going to waive the right to file
9   any pretrial motions in connection with your case challenging
10  any of the evidence, you're going to waive the right to have
11  that jury trial here in the courtroom, and, of course, you
12  waive the right to appeal the verdict of the jury if they
13  find you guilty.  Any questions about any of that?
14          THE DEFENDANT:  No.
15          THE COURT:  Mr. Behe, would you state for the
16  record the essential terms of the plea agreement.
17          MR. BEHE:  Yes, Your Honor.  In exchange for the
18  defendant agreeing to plead guilty to Count 1 of the
19  indictment the United States at time of sentencing will move
20  for the dismissal of the remaining counts of the indictment.
21  Mr. Felder understands by agreeing to plead guilty to Count 1
22  of the indictment he faces a term of imprisonment of up to 40
23  years and a mandatory minimum term of imprisonment of 5
24  years.  He also understands that he faces a potential fine of
25  up to $2 million, a special assessment in the amount of $100

1   and a term of supervised release to be imposed by the Court

2   that will be served at the conclusion of and in addition to

3   whatever term of imprisonment that he would face.  The

4   defendant has indicated to the United States that he accepts

5   responsibility for this offense, and in exchange for his

6   agreeing to plead guilty to Count 1 the United States has

7   agreed that, if appropriate, it would recommend to the Court

8   a 2 level reduction for acceptance of responsibility.

9          The defendant has also indicated that he wishes to

10  cooperate, and if his cooperation amounts to what is deemed

11  substantial assistance, then the United States again, if

12  appropriate, would ask the Court to depart below whatever

13  applicable guideline range or mandatory minimum term of

14  imprisonment that might apply.

15         If Your Honor notices in the plea agreement, Mr.

16  Felder and counsel have crossed out paragraphs 22 through 23

17  on pages 8 and 9 which in essence detail all the -- the

18  various ways in which the United States would expect Mr.

19  Felder to cooperate, and it seems kind of a paradox, he's

20  agreed to cooperate, yet he has taken that out, that is as a

21  result of the fact that Mr. Felder is under investigation in

22  the Eastern District of Philadelphia, and to the extent that

23  they might require him to do something or he might decide

24  that he wants to contest the charges down there, he didn't

25  want to be in a position where it may appear that he's in

1   violation of the plea agreement by not engaging in one of
2   these forms of cooperation, and so we did not disagree with
3   him removing that.  He has engaged in off the record proffers
4   with the United States on a number of matters, so it's just a
5   question of whatever happens in the eastern district he did
6   not want to have the plea agreement be interpreted as
7   obligating him to cooperate with them when he may be
8   contesting that, but other than that, I believe those are the
9   essential terms of the plea agreement.
10          THE COURT:  Mr. Felder, is that the agreement as
11  you understand it?
12          THE DEFENDANT:  Yes.
13          THE COURT:  There is a written agreement on file
14  with the Court.  It contains a lot of other provisions that
15  we haven't discussed here.  Did you have a chance to review
16  all of those --
17          THE DEFENDANT:  Yes, I did.
18          THE COURT:  -- provisions as well?  You agreed to
19  each and every one of the provisions that are in that
20  agreement?
21          THE DEFENDANT:  Yes.
22          THE COURT:  Any questions about any of them now for
23  your lawyer or for me?
24          THE DEFENDANT:  No.
25          THE COURT:  Miss Kennedy is going to show you on

1    page 14 there is a signature line at the end of the
2    agreement, it's not dated, but did you sign the agreement?
3             THE DEFENDANT: Yes, I did.
4             THE COURT: Your lawyer has dated it and signed it
5    beneath your name on June 19, 2002. Is that when you signed
6    it, --
7             THE DEFENDANT: Yes.
8             THE COURT: -- at the same time? Did you sign the
9    agreement willingly?
10            THE DEFENDANT: Yes.
11            THE COURT: Did anybody threaten, coerce you or
12   make any promises to you that are not in the agreement?
13            THE DEFENDANT: No, they did not.
14            THE COURT: You had a chance to review all of the
15   provisions before you signed it?
16            THE DEFENDANT: Yes.
17            THE COURT: Do you understand, as Mr. Behe has
18   noted, that the agreement is between you and the government,
19   not you and the Court? So he's going to make certain
20   recommendations, we don't know what all of them will be yet.
21   One of them sounds like it will be that you receive credit
22   for acceptance of responsibility, and he may also make a
23   recommendation that the Court engage in what we call a
24   downward departure, that I sentence you to less than the term
25   that I would otherwise impose in your case because of your

1  assistance to the government. He may make that
2  recommendation. You're obviously relying on his good faith
3  that if you help him, that he'll make the recommendation, but
4  I can't compel him to make that recommendation. Sometimes
5  there are disputes about whether or not you have helped
6  enough and the government doesn't want to make that
7  recommendation. I can't make him. It's really on his good
8  faith that he's going to do that.
9      And the other part of that is that he may make the
10 recommendation, and I may decide based on the legal standards
11 that apply to downward departure that you are not entitled to
12 it and I won't give it to you. Another option that could
13 happen here is he'll make the recommendation, I'll agree that
14 you're entitled to a downward departure, but I won't agree on
15 the amount of consideration that you are entitled to have;
16 that is, it's possible that he would recommend a certain
17 number of months or years in reduction in your sentence but I
18 would not agree with that amount. I would agree to a
19 downward departure but not that much. So those are all the
20 possibilities that could happen with this plea agreement. Do
21 you understand all of that?
22     THE DEFENDANT: Yes.
23     THE COURT: Do you have any questions about that?
24     THE DEFENDANT: No, I don't.
25     THE COURT: Has anybody promised you what your

1   sentence would be here?

2   THE DEFENDANT: No.

3   THE COURT: I'm sure you have had an opportunity to
4   talk to your lawyer about sentencing guidelines and how they
5   apply to your case.

6   THE DEFENDANT: Correct.

7   THE COURT: You understand the mandatory minimum,
8   and I'm sure he explained to you that the probation office is
9   going to do a very thorough investigation of this offense and
10  of you. They're going to make a report about your financial
11  history, your criminal history, your social history,
12  everything about you will be in that report. You'll get to
13  see it even before I see it, and you'll have 14 days to
14  comment on the report, to correct anything that's in the
15  report and even to offer information that you think would
16  reflect favorably on you and you would want the Court to
17  consider. Then you'll come back to court, and then I'll see
18  the report after it's been revised based on your comments.

19  It will contain not only all of that information
20  but a calculation of the sentencing guidelines that apply to
21  your case, and in most cases I will have to sentence you
22  within the guideline range that applies to your case, and
23  that's how we get into the discussion about downward
24  departure.

25  THE DEFENDANT: All right.

1         THE COURT: In some cases I could upwardly depart
2    from the guidelines. If I found that your crime was
3    particularly aggravated or there was special harm to the
4    victim or there were other circumstances that would warrant
5    it under the law, I could give you more than the guideline
6    range, but in this case there is a possibility that I would
7    give you less than the guideline range. But the important
8    thing is that right now nobody knows what your sentence is
9    going to be because we don't know how any of this is going to
10   turn out. All we know is that there is a mandatory minimum,
11   which we have already discussed, and there is a maximum
12   penalty of 40 years, so we know that your sentence is going
13   to lie somewhere between those two numbers but nobody knows
14   where. Any questions about any of that?
15        THE DEFENDANT: No.
16        THE COURT: Do you understand, Mr. Felder, that by
17   entering a guilty plea today you subject yourself to any
18   lawful sentence that I might impose in this case?
19        THE DEFENDANT: Yes.
20        THE COURT: Do you understand also that parole has
21   been abolished in the federal system, so when you're
22   sentenced to a period of incarceration, you're not going to
23   be released early on parole, and once you are released from
24   imprisonment you're going to be subject to a term of
25   supervised release as well?

1          THE DEFENDANT:  Correct.

2          THE COURT:  And, finally, do you understand that if
3  you don't like the sentence you draw in this case, you'll not
4  be able to withdraw your guilty plea?  Once you enter a
5  guilty plea you will subject yourself to any lawful sentence,
6  and you won't be able to withdraw the plea if you don't like
7  the sentence you draw.

8          THE DEFENDANT:  Correct.

9          THE COURT:  Okay, no questions about any of that?

10         THE DEFENDANT:  No.

11         THE COURT:  All right.  Mr. Behe, is there a
12  factual basis for the charge?

13         MR. BEHE:  Yes, Your Honor, if I may, in this
14  matter this was a case that was essentially referred to,
15  adopted or accepted by the Drug Enforcement Administration
16  upon referral from the Chambersburg Police Department.  On
17  June 8 of 2001 the Chambersburg police attempted through the
18  use of a cooperating individual to purchase about a hundred
19  dollars worth of crack cocaine from an individual that was
20  known to this cooperating individual only as "D".  The
21  individual who showed up at the cooperating individual's home
22  to sell the crack cocaine, the cooperating individual knew
23  only as "D", was the defendant Derrick Felder.  That sale did
24  not take place, however, because as the cooperating
25  individual told the police later, Mr. Felder was nervous

1   about the circumstances and things that just did not allow
2   for the sale to go forward, but the cooperating individual
3   told the police that he knew this "D" as someone who was
4   selling crack cocaine.
5   　　　　Several hours later, in the early morning hours now
6   of June 9, the police were able to locate Mr. Felder at a
7   local motel or hotel, and they executed a traffic stop of the
8   vehicle that he was in when he left the parking lot.  Mr.
9   Felder at that time presented false identification to the
10  police, identifying himself as Russell Woodson.
11  　　　　A search warrant was obtained for his room at the
12  Sheraton Four Points, and during the search police recovered
13  multiple ziplock bags and little glass vials containing crack
14  cocaine, a Browning 9 millimeter Lugar was located between
15  the mattress and box springs.  Approximately $900 in United
16  States currency was recovered during the search of Mr.
17  Felder's vehicle, and the 117 pieces of crack cocaine that
18  were recovered and separated from the different containers,
19  the packaging material and the glass vials was sent off to
20  the Pennsylvania State Police laboratory for weighing and
21  analysis.  It was determined that these 117 pieces were
22  indeed crack cocaine; that is, cocaine base, and the total
23  weight was 13. -- 13.5 grams.
24  　　　　THE COURT:  Mr. Felder, -- go ahead.
25  　　　　MR. GOVER:  The 13.5 grams was never shared with

1   us, Your Honor, I was under the impression it was more, so I
2   was just commenting to my client about that.
3           THE COURT: Mr. Felder, is that what happened here?
4           THE DEFENDANT: Yes.
5           THE COURT: Is there anything about what Mr. Behe
6   has stated that you want to correct for the record?
7           THE DEFENDANT: No.
8           THE COURT: When I sentence you in this case, I'm
9   going to assume all of those facts are true.
10          THE DEFENDANT: Okay.
11          THE COURT: Is it still your desire to enter a
12  guilty plea then?
13          THE DEFENDANT: Yes, it is.
14          THE COURT: The Court finds that the defendant is
15  acting voluntarily, that no force, threats or promises apart
16  from the plea agreement have been made to him, that he
17  understands the rights and consequences of entering a guilty
18  plea and that the plea has a basis in fact and contains all
19  of the elements of the crime charged. Accordingly the Court
20  accepts the defendant's guilty plea on Count 1 of the
21  indictment and defers sentencing pending a report of the
22  probation office.
23          Is there anything else for the record, counsel?
24          MR. BEHE: No, Your Honor.
25          MR. GOVER: No.

1        THE COURT:  We'll be in recess.

2        (The proceedings concluded.)

3

4        I hereby certify that the proceedings and evidence

5  of the court are contained fully and accurately in the notes

6  taken by me on the change of plea of the within cause and

7  that this is a correct transcript of the same.

8                              *Monica L. Zamiska* (signature)

9                              Monica L. Zamiska, RPR

10                             Official Court Reporter