IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:01-CR-260 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| DERRICK RUSSELL FELDER, | : | |
| | : | |
| Petitioner | : | |

## MEMORANDUM AND ORDER

Before the Court is a pro se motion to vacate pursuant to 28 U.S.C. § 2255, filed March 11, 2004. (Doc. No. 54.)

## I. BACKGROUND

On June 9, 2001, a search warrant was obtained for Derrick Russell Felder's (Petitioner) hotel room. During the search, police recovered 17 ziplock bags and 100 glass vials containing crack cocaine and a handgun under the mattress in Petitioner's hotel room. Police also recovered $900 in United States currency during the search. On August 8, 2001, a grand jury in Harrisburg returned a three-count Indictment charging Petitioner with the unlawful distribution and possession with the intent to distribute five grams or more of cocaine base, also known as crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count I), use of a communication facility, specifically, a telephone, to facilitate drug trafficking in violation of 21 U.S.C. § 843(b) (Count II), and with possessing a firearm during, and in relation to, a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) (Count III).

On September 12, 2001, United States Magistrate Judge Andrew Smyser released Petitioner on his own recognizance. However, a condition of Petitioner's release prohibited him from possessing firearms, dangerous weapons, and destructive devices. On November 7, 2001, a warrant was issued

for the arrest of Petitioner based upon a revocation of release motion filed by the government. This motion alleged that on November 2, 2001 Petitioner purchased nine handguns from a store in Gettysburg, Pennsylvania during his release, less than two months after Petitioner's release from custody. The motion further alleged that Petitioner presented false identification to effectuate the weapons purchase and paid for the firearms in cash. On November 9, 2001, agents of the Alien Task Force arrested Petitioner in Philadelphia and Petitioner was ordered removed to the Middle District of Pennsylvania and placed in the custody of the United States Marshal Service. On December 4, 2001, Petitioner again appeared before Magistrate Judge Smyser and bail was revoked.

On July 24, 2002, Petitioner pled guilty to Count I of the Indictment pursuant to a plea agreement. Under the terms of the plea agreement, the government agreed to move for the dismissal of the remaining counts of the Indictment (Counts II and III) at sentencing.

On May 14, 2003, this Court sentenced Petitioner to a term of imprisonment of 120 months. At sentencing, this Court stated that Petitioner's "criminal behavior is off the charts," that he has a "terrible criminal record," and that "I don't see how anybody 22 years old could have amassed the kind of record that [Petitioner] already [has]." (Doc. No. 60, at 7.) Furthermore, this Court noted that, in purchasing weapons during his release, Petitioner "reoffend[ed] in a horrific way" and that this Court "view[ed] the new offense in the most serious way." (Id.) Additionally, in applying the sentencing guidelines, this Court observed that "there is reason to suggest that [Petitioner's] criminal conduct and the way it's calculated by the guidelines really does underestimate the potential that [Petitioner has] to reoffend" because "[e]verything about [Petitioner] says that [he] could be headed to a lifetime of crime . . . ." (Id.) Petitioner's 120 month sentence was within the sentencing guidelines range for Petitioner's

unlawful distribution offense. Pursuant to the plea agreement, the government immediately moved for the dismissal of Counts II and III of the Indictment following this Court's sentencing for Count I. (Doc. No. 61, at 10-11.) Finally, this Court granted Petitioner's request to designate Fort Dix Penitentiary as Petitioner's place of confinement.

Petitioner did not appeal his sentence. Petitioner brought the present motion to vacate pursuant to 28 U.S.C. § 2255 within one year of the May 14, 2003 sentencing. (Doc. No. 54.) The government filed a response in opposition therto on July 21, 2004. (Doc. No. 64.)

## II. SUMMARY OF PETITIONER'S ARGUMENTS

Petitioner presents three arguments in support of his motion to vacate. Each of the three grounds asserts ineffective assistance of counsel under varying rationales. First, he argues that the above-captioned case could have been consolidated with another pending criminal matter in the Eastern District Court of Pennsylvania and that such consolidation would have resulted in a shorter sentence. (Doc. No. 54, at 5.) Petitioner asserts that he did not understand the nature of the charges nor the consequences of his plea and that this was the fault of his counsel. Second, Petitioner argues that his decision to plead guilty was based upon his understanding that the government would agree to drop a charge pursuant to 28 U.S.C. § 924(c)(1) that carried a five-year mandatory sentence. (Id.) It appears that Petitioner claims ineffective assistance of counsel because he alleges that the § 924(c)(1) charge did not apply to him and would have been dismissed at trial. Finally, Petitioner asserts that his counsel failed to argue on his behalf to attain the full benefit of the provisions in the plea agreement when the government allegedly breached its agreement to recommend a two-level reduction in Petitioner's sentence. (Id.)

3

III. **DISCUSSION**

A. **Legal Standards**

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct the prisoner's sentence. 28 U.S.C. § 2255 (2004). However, § 2255 does not afford a remedy for all errors that may have been made at trial or sentencing. United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993). "The alleged error must raise 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (quoting United States v. Hill, 368 U.S. 424, 428 (1962)). Furthermore, § 2255 generally limits federal prisoners' ability to attack the validity of their sentences to four grounds. Hill v. United States, 368 U.S. 424, 428 (1962). A prisoner may claim relief by alleging that (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." Id.

A collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to survive. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the sentencing hearing would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel. George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

4

The first Strickland prong requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This prong requires a petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. However, "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996).

Under the second Strickland prong, a petitioner "must demonstrate that he was prejudiced by counsel's errors." Id. This prong requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id.

Moreover, the decision whether to hold a hearing when a prisoner moves to vacate a judgment under § 2255 is left to the sound discretion of the district court. Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). In general, if a petitioner raises an issue of material fact, a district court must afford a hearing in order to determine the truth of the prisoner's allegations. Essig, 10 F.3d at 976. However, a prisoner is not entitled to a hearing if the allegations set forth are contradicted conclusively by the record or if the allegations are patently frivolous. Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001).

This Court will examine each of Petitioner's grounds for ineffective assistance of counsel in seriatim.

5

### B. Ineffective Assistance of Counsel for Failure to Move to Consolidate

In support of his motion to vacate, Petitioner first asserts that he did not understand his guilty plea or the consequences thereof. (Doc. No. 54, at 5.) Specifically, Petitioner claims that his counsel led him to believe that a guilty plea was in his best interests. Petitioner, however, asserts that his counsel's suggestion was misguided and led Petitioner to a defective understanding of his plea agreement. Petitioner alleges that his counsel was aware that the Eastern District Court of Pennsylvania was in the process of filing an indictment against Petitioner and claims that the Eastern District was willing to consolidate Petitioner's two cases. Petitioner theorizes that his overall sentence would have been shorter if Petitioner's Middle District case and alleged Eastern District case were consolidated and he was convicted. Thus, Petitioner asserts that pleading guilty pursuant to his counsel's suggestion worked to his disadvantage, constituting ineffective assistance of counsel, which compels this Court to vacate Petitioner's sentence.

Petitioner's first argument must fail. Petitioner presents no evidence that he had been charged with an offense in the Eastern District at the time of his Middle District proceedings, nor that he has since been charged. Petitioner's guilty plea colloquy in July 2002 shows that Petitioner was merely "under investigation" in the Eastern District at that time. (Doc. No. 61, at 8.) Petitioner presents no evidence of a prosecution in the Eastern District and thus, at the time of the guilty plea, there existed no case to consolidate with the Middle District proceedings. Accordingly, Petitioner's claim of ineffective assistance of counsel for failure to move to consolidate fails because, at the time of his guilty plea, there was no apparent possibility, given the record, that his Middle District case would have been consolidated with any alleged Eastern District case. See Narvaez v. Hubbard, No. C 98-3727 VRW,

6

1999 U.S. Dist. LEXIS 12654, at * 16-7 (N.D. Cal. 1999) (stating that counsel's failure to move to consolidate two actions did not constitute ineffective assistance of counsel where there was no apparent reason to believe that a court intended to consolidate the two actions).

Moreover, at the time that he entered his guilty plea, Petitioner was maintaining his innocence to the extent that, if prosecuted, Petitioner "might decide that he wants to contest the charges [in the Eastern District]." (Id. at 8.) Thus, at the time of Petitioner's guilty plea, he exhibited no intention to plead guilty to any Eastern District charge that might have ameliorated a sentence in the Middle District through consolidation. Counsel's failure to move to consolidate Petitioner's Middle District case with an alleged Eastern District prosecution was not "deficient" representation nor did it fall below an objective standard of reasonableness. Jermyn, 266 F.3d at 282.

Accordingly, this Court will dismiss Petitioner's first ground for relief.

### C. Ineffective Assistance of Counsel in Assuring Petitioner that a Guilty Plea was Beneficial to Avoid a Mandatory Sentence

Petitioner further alleges that his counsel assured him that pleading guilty in order to secure dismissal of Count III of the Indictment (possessing a firearm during, and in relation to, a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)) would be beneficial in part because this would avoid a possible mandatory-consecutive sentence that accompanies this offense. (Doc. No. 54, at 5.) Petitioner contends that such representation was ineffective because he could not have been convicted of the § 924(c) offense under Bailey v. United States, 516 U.S. 137 (1995). In response, the government argues that Petitioner's counsel effectively secured a plea agreement that greatly benefitted Petitioner in three ways. (Doc. No. 64, at 7.) Specifically, the government notes that, as a

result of the plea agreement, the government did not charge Petitioner with the unlawful purchase of the multiple handguns and use of false identification committed during Petitioner's release. Second, the government states that it did not supersede the initial indictment and increase the amount of narcotics which the government asserts it was prepared to do in light of information regarding Petitioner's drug activities in the Chambersburg, Pennsylvania area. Third, the government notes that Petitioner further benefitted from the dismissal of Count II[1] which was still pending at the time of the plea agreement.

Petitioner's argument in this regard must fail. Counsel's recommendation to accept the guilty plea in exchange for: (1) the dismissal of Counts II and III; (2) the government's agreement not to charge Petitioner for the unlawful purchase of handguns while on release from custody; and (3) in exchange for the government agreeing not to increase the drug amount under Count I of the Indictment, did not constitute deficient representation. Moreover, counsel's recommendation did not render counsel's representation below a standard of reasonableness. Petitioner benefitted greatly from the totality of the plea agreement. Petitioner fails to appreciate the benefits of the plea agreement in its entirety. Simply alleging that one count may not have withstood judicial scrutiny does not render an overall plea arrangement worthless, nor does counsel's suggestion to plead guilty constitute ineffective representation.

Furthermore, Petitioner's assertion that the 18 U.S.C. § 924(c)(1)(A) charge under Count III necessarily would not have "applied" to him is misguided. (Doc. No. 54, at 5.) Petitioner apparently believes that Count III would have been dismissed because Bailey provides that under § 924(c)(1)(A),

---

[1]Count II charged Petitioner with the use of a communication facility, specifically, a telephone, to facilitate drug trafficking in violation of 21 U.S.C. § 843(b).

8

the government show that a defendant actively employed a firearm during and in relation to a predicate crime, and that merely storing a firearm near drugs or drug proceeds does not constitute a violation of § 924(c)(1)(A). Bailey, 516 U.S. at 149. Petitioner assumes that his case falls within Bailey, given that the firearm was merely found under Petitioner's mattress along with the drugs but was not "actively employed." However, in 1998, Congress amended 18 U.S.C. § 924(c)(1)(A) in direct response to Bailey. See Pub. L. No. 105-386, 112 Stat. 3469 (1998) (codified at 18 U.S.C. § 924(c)(1)(A)) (stating that "any person who, during and in relation to any crime of violence or drug trafficking, . . . who, in furtherance of any such crime, possesses a firearm . . . shall . . . be sentenced to a term of imprisonment of not less than 5 years. . . .") (emphasis added). Notably, the current version of the statute does not require defendants to have actively employed the firearm in furtherance of a drug crime in order to violate § 924(c)(1)(A). United States v. Grace, 367 F.3d 29, 35 (1st Cir. 2004). Instead, "§ 924(c)(1)(A) was amended after Bailey to add the act of possession as an act that, if done in furtherance of a violent or drug trafficking crime, violates that statute." United States v. Morgan, No. 01-2016, 2002 U.S. App. LEXIS 5328, at *6 (3d Cir. Mar. 29, 2002) (emphasis added).

In Morgan, three handguns were recovered in the defendant's apartment where substantial amounts of illegal drugs were also found. Id. The court determined that "such propinquity supports the conclusion that the firearms were intended to be used for the furtherance of the illegal drug trafficking" and found such proximity sufficient to sustain a guilty verdict. Id. In the present case, Petitioner's firearm was found in much greater proximity to the drugs than the firearms in Morgan. Thus, there was a substantial probability that Petitioner would have been convicted of the § 924(c)(1)(A) charges in light of Morgan. At the least, counsel's assurance that Petitioner would benefit from the plea agreement

9

which in part included the dismissal of Count III and its accompanying mandatory sentence was not deficient nor was it an error so serious to compromise Petitioner's guaranteed representation under the Sixth Amendment.

Accordingly, Petitioner's second ground for relief will be dismissed.

### D. Ineffective Assistance of Counsel for Failure to Argue Two-Level Reduction

Under his third ground in his motion to vacate, Petitioner asserts that his counsel never argued that his acceptance of responsibility warranted a two-level reduction in his sentencing. (Doc. No. 54, at 5.) Additionally, Petitioner alleges that the government breached its agreement to recommend a two-level reduction at sentencing following Petitioner's acceptance of responsibility. (Id.) Petitioner asserts that these two failures further compel this Court to vacate his sentence.

Petitioner's third ground fails under the first prong of the Strickland test. Contrary to Petitioner's assertion that his counsel failed to argue that Petitioner's acceptance of responsibility warranted a lesser sentence, Petitioner's counsel brought this Court's attention to Petitioner's timely acceptance of responsibility, his assistance given to the government, his familial support, and his promising intelligence. (Doc. No. 60, at 3-4.) Furthermore, Petitioner's counsel requested that, if the Court did not determine a downward departure from the sentencing guidelines was appropriate, this Court alternatively sentence Petitioner to the lower end of the sentencing guidelines range and again afford Petitioner the "benefit of acceptance." (Id. at 3.) The sentencing transcript illustrates no conduct on the part of Petitioner's counsel that exemplifies "deficient" representation "so serious" as to not constitute representation guaranteed by the Sixth Amendment. Jermyn, 266 F.3d at 282.

However, assuming arguendo that Petitioner's representation was deficient, Petitioner's claim fails under the second prong of Strickland. Counsel's alleged deficiency did not prejudice Petitioner. To the contrary, there is no evidence that, had Petitioner's counsel pleaded with more fervor, Petitioner's offense level would have been reduced and his guideline range less severe. This Court rightfully declined to credit Defendant for acceptance of responsibility due to his post-plea criminal conduct. Petitioner was not lawfully entitled to be credited for acceptance of responsibility and no amount of advocacy would have changed that fact. Thus, any alleged deficiency exhibited by Petitioner's counsel did not cause a "complete miscarriage of justice." Hill, 368 U.S. at 428. Similarly, given this Court's emphasis at sentencing on Petitioner's criminal past and present conduct, Petitioner's legal representation did not produce a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Jermyn, 266 F.3d at 282.

As an alternative ground to vacate, Petitioner claims that the government breached its agreement to recommend a downward departure from the otherwise applicable sentencing range in exchange for Petitioner's assistance. (Doc. No. 54, at 5.) In response, the government argues that Petitioner's post-arrest unlawful purchase of handguns with false identification while on release from custody vitiated its obligation to recommend a downward departure for acceptance of responsibility. (Doc. No. 64, at 8.) The government notes that it agreed to a recommendation, but only if appropriate. (Id.) The government further argues that Petitioner's criminal conduct while released on bail outweighs whatever cooperation Petitioner provided. (Id.)

A petitioner carries the burden of proving a claim of prosecutorial vindictiveness for failure to recommend leniency at sentencing in exchange for substantial assistance. United States v. Schoolcraft,

11

879 F.2d 63, 68 (3d Cir. 1989) cert. denied, 493 U.S. 995 (1989). In general, there are two ways in which a petitioner can prove a claim of vindictiveness. United States v. Paramo, 998 F.2d 1212, 1220 (3d Cir. 1993). First, a petitioner may utilize evidence of a prosecutor's retaliatory motive to prove actual vindictiveness. Id. Second, a petitioner may, in limited circumstances, show facts sufficient to give rise to a presumption of vindictiveness. Id. However, courts apply the second method only where a "realistic likelihood of vindictiveness" exists. Blackledge v. Perry, 417 U.S. 21, 27 (1974). Even if a petitioner establishes such a realistic likelihood of vindictiveness, the government is still afforded the opportunity to proffer a legitimate, objective reason for its conduct. Paramo, 998 F.2d at 1220. If the government successfully shows that its conduct is attributable to a legitimate reason, the presumption of vindictiveness does not apply. Id.

      In the present case, Petitioner sets forth no evidence that illustrates any actual or presumptive prosecutorial vindictiveness on the part of the government in the present case. To the contrary, during the guilty plea colloquy, the government expressly stated that, even if Petitioner's cooperation amounted to substantial assistance, it would ask this Court to depart from the applicable guidelines only if appropriate. (Doc. No. 61, at 8.) Additionally, this Court warned Petitioner at the guilty plea colloquy that it was not bound by any governmental recommendation, but instead "may decide . . . that [Petitioner is] not entitled to [a downward departure from the sentencing guidelines range] and I won't give it to you." (Id. at 11.) Moreover, Petitioner's immediate return to serious criminal activity vitiated the obligation of the government to recommend that Petitioner deserved a downward departure or that such a departure was appropriate.

      Accordingly, this Court will dismiss Petitioner's third ground for relief.

IV. **ORDER**

For the foregoing reasons, the motion to vacate or adjust Petitioner's sentence pursuant to 28 U.S.C. § 2255 shall be **DISMISSED**. The Clerk of Court shall close the file.

                                                                  s/ Yvette Kane
                                                                  Yvette Kane
                                                                  United States District Judge

Dated: December 16, 2004.